UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DILAGENE C. DAVIS,

    Plaintiff,

v.

OAKLAND PEBBLE CREEK HOUSING
ASSOCIATES, LP,

    Defendant.
_____/

Case No. 11-11572
Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse, in the City of Port Huron, State of Michigan, on February 19, 2012.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's motion for summary judgment [dkt 12]. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without oral argument. For the following reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

On July 23, 2010, Plaintiff was walking from her residence in Defendant's apartment complex to her friend's apartment, also part of Defendant's complex. While proceeding on the sidewalk, Plaintiff encountered a section of concrete containing a crack or break. Although she was "able to

appreciate that the sidewalk was cracked," Plaintiff alleges that the "change in height" in the sidewalk was not visible and caused her to trip and fall:

> Q. So during the afternoon you were walking to the daughter of a girlfriend's apartment at Pebble Creek?
> A. Yes.
> Q. And you fell in this area that's depicted in Exhibit A?
> A. Yes.
> Q. Now, it was broad daylight at the time?
> A. Yes.
> Q. And the condition of the walkway was obvious to you; correct?
> A. What do you mean?
> Q. Well, I mean, you could see clearly where you were walking at the time; right?
> A. Yes.

*See* Dkt. 12, ex. C at ¶ 19.

At the time of the incident, Plaintiff had been a resident of Defendant's apartment complex for several years. She claims that, as a result of her trip and fall, she sustained the following injuries: three fractures to her right wrist; injuries to her neck, back, arms, legs, body, eyes, head, muscles, ligaments; bruises, abrasions, lacerations and contusions to the legs and head; injuries to the nerves of the arms, legs, neck, spine and back; convulsions and severe shock and injury to the nervous system; severe emotional shock, stress and physiological as well as psychiatric problems such as depression; loss of wages; medical expenses; and other injuries to be determined upon further discovery.

Prior to the incident, a concrete repair contractor had been in the area, and the portion of the sidewalk where Plaintiff allegedly fell was highlighted with bright, spray-painted arrows in preparation for repair.

Plaintiff asserts that there was no alternate route and that she had no choice but to encounter the cracked sidewalk. She claims that although she was wearing athletic shoes, she did not want to walk on the grass because it was less safe than walking on the cracked, marked sidewalk and because she was fearful of what lay hidden in the grass. She also admits that there were other ways to enter and leave the premises:

Q. What type of shoes were you wearing at the time?
A. Gym shoes. Nike Air.
Q. And you could have walked on the grass, correct?
A. I didn't want to walk on the grass because of the lumps and stuff like that. I didn't want to walk on the grass.
Q. *So the grass seemed less safe than the sidewalk as you observed it?*
A. *It just—yes.*
Q. Looking at the grass there, it looks nicely maintained. Was there anything in particular about the grass there that was a hazard to you?
A. *I just didn't want to trust the grass. Sometimes grass has them little hidden pockets, holes and stuff where it looks like it's grass but you still have those hidden pockets.*
Q. Now, looking at the sidewalk, it seems like there's plenty of areas around the cracks that you could have walked on, correct?
A. Yes. I guess.

\*\*\*

Q. You didn't think it was unreasonably dangerous to walk over [the cracked] area of the walkway?
A. Evidently I didn't because I'm just walking. I just walked and, you know, I got caught up in that crack.

*See* Dkt. 12, ex. C at ¶¶ 15–16, 19.

In Count I of her complaint, Plaintiff states a claim of negligence, alleging that Defendant: negligently maintained a dangerous and defective condition on the sidewalks; failed to take precautionary measures to correct or alleviate unsafe conditions caused by the defective sidewalks; failed to keep the sidewalks in a safe and habitable condition; negligently ignored requests by Plaintiff and others to correct the defective conditions; and engaged in other acts of negligence not yet known. In Count II, Plaintiff alleges that Defendant's conduct violated Mich. Comp. Laws § 554.139.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

> declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### IV. ANALYSIS

Defendant argues that the cracks in the sidewalk were "open and obvious," thereby precluding Plaintiff from recovering on her negligence claim. As to its alleged violation of Mich. Comp. Laws § 554.139, Defendant states that although the sidewalk was in the process of being repaired, it remained fit for its intended use.

"To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000). With respect to the duty element, "the general rule is

4

that a premises possessor 'owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land.'" *Lawrence v. U.S.*, 679 F. Supp. 2d 820, 825 (E.D. Mich. 2010) (*citing Lugo v. Ameritech Corp.*, 464 Mich. 512, 516 (2001)). "Questions concerning the duty element of a negligence action are for the court to decide as a matter of law." *Id.* (*citing Scott v. Harper Recreation, Inc.*, 444 Mich. 441, 448 (1993)). The parties do not dispute that Plaintiff was an invitee on the premises at the time of the incident.

### A. OPEN AND OBVIOUS

"[W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Wasaya v. United Artist Theatre Circuit, Inc.*, 205 F. Supp. 2d 756, 759 (E.D. Mich. 2002) (citation omitted). "To determine if a danger is open and obvious, the relevant inquiry is whether 'an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection.'" *Id.* at 759 (*citing Novotney v. Burger King Corp.*, 198 Mich. App. 470, 499 (1993)). If there are "special aspects" of a condition that make even an "open and obvious" danger "unreasonably dangerous," the premises possessor maintains a duty to undertake reasonable precautions to protect invitees from such danger. *Lugo*, 464 Mich. at 517.

To determine "whether a condition is 'open and obvious,' or whether there are 'special aspects' that render even an 'open and obvious' condition 'unreasonably dangerous,' the fact-finder must utilize an objective standard, *i.e.*, a reasonably prudent person standard." *Lawrence*, 679 F. Supp. 2d at 824 (*citing Lugo*, 464 Mich. at 517). That is, in a premises liability action, the fact-finder must consider the "condition of the premises," not the condition of the plaintiff, *Lugo*, 464 Mich. at 518 n. 2, or the subjective degree of care used by the plaintiff, *Id.* at 516. As such, to survive a motion for summary judgment, a plaintiff must "come forth with sufficient evidence to create a genuine issue of material fact

that an ordinary user upon casual inspection could not have discovered the existence" of the danger, and therefore it is irrelevant whether the specific plaintiff in any given case actually saw the danger. *Novotney*, 198 Mich. App. at 475.

The Court finds that even if the crack in the sidewalk was itself open and obvious, Plaintiff has created a genuine issue of fact by providing photographic evidence purportedly showing that the crack created an unreasonably dangerous condition. Although Plaintiff acknowledges that the cracks in the sidewalk were open and obvious, she argues in her response brief that the varying height of the concrete surrounding the crack—and not the crack itself—was not visible to her. The photographs of the area in question submitted to the Court by the parties are hazy, unclear, and therefore inconclusive. As such, a genuine factual issue remains as to whether the concrete surrounding the crack was uneven to such an extent that it would have been open and obvious to the average invitee. *See Novotney*, 198 Mich. App. at 474.

The Court turns next to Plaintiff's claim that Defendant violated Mich. Comp. Laws § 554.139 (Count II).

### B. MICH. COMP. LAWS § 554.139

Section 554.139 provides in pertinent part:

> (1) In every lease or license of residential premises, the lessor or licensor covenants:
>
> (a) That the premises and all common areas are fit for the use intended by the parties.
>
> (b) To keep the premises in reasonable repair during the term of the lease or license[.]

Mich. Comp. Laws § 554.139. Plaintiff argues that Defendant violated subsections (a) and (b) because the sidewalk was unfit for its intended purpose and because Defendant did not keep the sidewalk in reasonable repair.

6

First, although the portion of the sidewalk in question was cracked and in the process of being replaced, by no means was the entire sidewalk unusable. Although inconclusive on the issue of whether the concrete around the crack was dangerously uneven, the photographs do show that the crack did not span the entire length of the sidewalk or the entire width of the sidewalk, instead affecting only about a third of the width of a particular section. While the crack may have reduced the fully usable portion of the sidewalk, the sidewalk remained substantially fit for walking—its intended purpose. *See Benton*, 270 Mich. App. at 444 ("[T]he intended use of a sidewalk is walking on it[.]"). Further, while not dispositive to Plaintiff's earlier claim, the photographs—as well as Plaintiff's testimony—indicate that Plaintiff could have avoided the alleged danger by walking on the grass momentarily. While the sidewalk was not in perfect condition, reasonable minds could not disagree that it was in the process of being repaired yet nevertheless remained fit for its intended use.

Therefore, no reasonable jury could find Defendants in violation of Mich. Comp. Laws § 554.139(l)(a) on the basis of the sidewalk's state of repair or fitness for its intended use, and Defendant is entitled to summary judgment with respect to Count II.

### V.  CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Defendant's motion for summary judgment [dkt 12] is GRANTED IN PART and DENIED IN PART in accordance with the following:

A. Defendant's motion is GRANTED with respect to Count II of Plaintiff's Complaint;

B. Defendant's motion is DENIED with respect to Count I of Plaintiff's Complaint.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff<br>
LAWRENCE P. ZATKOFF<br>
U.S. DISTRICT JUDGE

**Dated: February 19, 2013**